UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.

SUSAN E. COHEN, on behalf of herself and all
others similarly situated,

    Plaintiff,

vs.

SCOTT A. NEUMAN, FRAGRANCE
DIRECTORY, INC. d/b/a DIRECT
FRAGRANCES, and MONARCH SALES,
LTD., INC.

    Defendants.
_____/

## COMPLAINT

Plaintiff, Susan E. Cohen ("Cohen" or "Plaintiff") on her own behalf and on behalf of all those similarly situated, sues Defendants, Scott A. Neuman ("Neuman" or "Individual Defendant"), Fragrance Directory, Inc. d/b/a Direct Fragrances ("Direct Fragrances"), and Monarch Sales, Ltd., Inc. ("Monarch") (Direct Fragrances and Monarch are collectively referred to as the "Corporate Defendants") (Neuman, Direct Fragrances and Monarch are collectively the "Defendants"), and states:

## GENERAL ALLEGATIONS

1.    This is an action for declaratory judgment, to recover monetary damages in the form of unpaid overtime compensation, as well as an additional amount as liquidated damages, to redress the deprivation of rights secured to Plaintiff and other employees similarly situated by the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA") and for an award of attorneys' and paralegal fees and costs.

**JURISDICTION**

2. This Court has subject jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), under the FLSA as to Counts I and II. This Court has supplemental subject jurisdiction over the state law claim brought in Count III under 28 USC § 1367.

3. At all times material, Plaintiff was a non-exempt employee.

4. At all times material, Corporate Defendants were the joint employers of the Plaintiff.

5. At all times material, Corporate Defendants were in a joint enterprise in the ownership and operation of a wholesale fragrance business located at the same shared location in Miami, Florida.

6. At all times material, Corporate Defendants operated as a business organization which sells and/or markets its services and/or goods to customers throughout the United States and elsewhere and also provides its services for goods sold and transported from across state lines of other states, and the Corporate Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use electronic, digital and telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engage in interstate commerce, particularly with respect to their employees. As such, Defendants own and operate a business engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and 203(s).

7. Upon information and belief, at all times material hereto, Corporate Defendants annual gross revenue exceeded $500,000 per annum separately, or combined as a joint enterprise with the other Corporate Defendant named herein, or which are as of yet unknown, but will be revealed through further discovery. To the extent that Corporate Defendants operated as part of a joint enterprise, they did so with corporate entities that performed related

activities, under the common control of Neuman, and for common business purposes related to the work performed by Plaintiff for the Defendants.

8. The Defendants are subject to the personal jurisdiction of this Court because they operate, conduct, engage in, and/or carry on business in the Southern District of Florida.

9. The Defendants are also subject to the personal jurisdiction of this Court because they engage in substantial and not isolated activity within the Southern District of Florida.

## VENUE

10. This Court is the appropriate venue based upon the following:

   (a) The unlawful employment practices alleged herein occurred and/or were committed in the Southern District of Florida and,

   (b) Defendants were and continue to be companies and employers with individuals doing business within the Southern District of Florida.

## PARTIES

11. Plaintiff was and continues to be a resident of Quogue (Long Island), New York, from where she worked for the Corporate Defendants from the office in her home.

12. Defendants misclassified Plaintiff as "salaried," as it improperly did many of the people working for them.

13. Despite how she was misclassified, Plaintiff was, in fact, a "non-exempt" employee of the Defendants within the meaning of the FLSA.

14. Defendant, Direct Fragrances, was the putative direct employer of Plaintiff and one of Plaintiff's employers within the meaning of the FLSA.

15. The other employers were the remaining Defendants, Monarch and Neuman.

16. Plaintiff worked full time for Defendants in sales for over the last 17 years until October 23, 2020, when she was summarily terminated without cause.

3

17. Defendants did not keep time records of the time worked by Plaintiff, or most of the other people working for them.

18. Defendants did not pay Plaintiff overtime even though she was non-exempt and worked more than 40 hours per week in most, if not all, of the weeks she worked for Defendants.

19. Corporate Defendants, Direct Fragrances and Monarch, are a joint or common enterprise as defined in 29 U.S.C. § 203 (r)(1), and they are also joint employers as defined in 29 C.F.R. §791.2.

20. Corporate Defendants, Direct Fragrances and Monarch, are a joint or common enterprise as defined in 29 U.S.C. § 203 (r)(1), and they are also joint employers as defined in 29 C.F.R. §791.2.

21. The Corporate Defendants have:

   A. related business and sales activities and share just about everything (including, but not limited to, ownership, officers, directors, founders, employees, management, staff, marketing, technology, purchasing, contracting, professional services, accounting, tax preparation, facilities, vendors, and referral networks);

   B. unified operations and common control of the day-to-day operations;

   C. a common business purpose, the profitable operation of their wholesale fragrance businesses; and

   D. with that purpose, provide the necessary facility, supplies, equipment and staffing for the operation of each other.

4

22. The Corporate Defendants were joint employers because, as to each other, among other things:

> A. They had absolute control of the workers;
> B. They had extensive supervision, direct or indirect, of the work being performed;
> C. They had the power to determine the pay rates or the methods of payment of the workers;
> D. They had the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
> E. Preparation of payroll and the payment of wages was done centrally, albeit sometimes under the guise of being done separately;
> F. There existed common ownership/leasing of the facilities where work occurred;
> G. Services performed by employees of each of the Corporate Defendants owned/leased and operated by the Corporate Defendants were an integral part of the business operation of the Corporate Defendants; and, among other things,
> H. They had relative investments in the enterprise. The Corporate Defendants provided financial assistance to each other, they provided the equipment, staff and facilities to run business at their shared location. They depended on each other for the provision of supplies, materials, administration, staffing, etc. to perform their functions. They were economically dependent on each other. They paid the salaries of workers of the other. They shared mutual clients and referred clients to each other.

23. In more detail, as examples of the foregoing:

> A. both businesses operated out of the same physical space at: 11955 SW 142nd Terrace, Miami, Florida 33186;
>
> B. Neuman is paid a salary by Direct Fragrances although he does no work for Direct Fragrances and works full time at Monarch;
>
> C. Neuman pays his son, Harrison Neuman, out of Direct Fragrances although he works for Monarch;
>
> D. Neuman asked Cohen to conduct sales for Monarch for commission although she is employed full time for Direct Fragrances;
>
> E. Direct and Monarch operate out of the same warehouse and often share warehouse personnel to accomplish fulfillment of one another's orders;
>
> F. Monarch's general manager, Chuck Puckett, is also Direct Fragrances' general manager. she is on Direct Fragrances' payroll as

well as Monarch's, and he works directly with Direct Fragrances' Vice President of Operations, Christine Clark, and all of Direct Fragrances' personnel, and Dareine Marti works as Monarch's and Direct Fragrances' personal assistant to sales and office support staff;

G. Monarch and Direct are both sourcing from the same people and looking to flip deals to the same customers (except in the direct purchases made from one particular manufacturer, [REDACTED]); and

H. Neuman demanded that Cohen set her and Monarch up with purchasing from the manufacturers for whom Cohen got Direct Fragrances authorized to distribute and became very angry at Cohen for refusing to get Monarch set up with Direct Fragrances' direct partners, such as [REDACTED].

24. At all times material, Neuman was an owner, director, and officer of both Direct Fragrances and Monarch, and exercised total, complete and absolute overall control of the businesses and he acted directly in the interests of them both in relation to their employees, including Cohen.

25. Defendants knowingly and willfully failed to pay Plaintiff and other employees similarly situated their lawfully earned wages and overtime compensation in conformance with the FLSA.

26. The Plaintiff, and others similarly situated to her, were workers who for the Corporate Defendants and who were misclassified as "salaried," exempt employees, and were not paid overtime for hours they worked over 40 hours in one or more weeks over the past three years.

27. Plaintiff typically worked five days per week, from as early as 8:00AM-9:00AM until about 12 hours later, working through meal periods, as follows:

|  | Typical office/work schedule |  |  | Hours |
| --- | --- | --- | --- | --- |
| Monday | 8:30AM – 8:30PM |  |  | 12 |
| Tuesday | 8:30AM – 8:30PM |  |  | 12 |
| Wednesday | 8:30AM – 8:30PM |  |  | 12 |
| Thursday | 8:30AM – 8:30PM |  |  | 12 |
| Friday | 8:30AM – 8:30PM |  |  | 12 |
|  |  |  | Total: | 60 |

28. In addition, Plaintiff worked additional time when away from the office, before arriving at the office, after leaving the office at night and on the weekend, including, but not limited to, when she was using the phone, texting and/or emailing because she was constantly contacted by, and had to respond to customers, vendors, staff, and others concerning work-related demands or otherwise. Such time was in addition to the hours reflected in the table above.

29. Plaintiff did not work more than 40 hours only about 3 weeks per year.

30. Plaintiff was paid the same exact amount every week, based on an annual salary of $150,000, which equates to about $2,884.62 per week.

31. Plaintiff's regular rate, therefore, was approximately $51.02 per hour. Therefore, Plaintiff's overtime hourly rate was $76.53.

32. Overtime should have been paid for an average of 20 overtime hours per week at $76.53 per hour or $1,530.60/week for the 143 weeks worked preceding the filing of this action) (applying a three-year statute of limitation) or $218,875 in compensatory damages and an additional statutory amount of $218,875 in liquidated damages for a total of $437,750.[1]

33. The preceding paragraphs 28-33 set forth:

A. **An initial estimate of the total amount of alleged unpaid wages;**

B. **A preliminary calculation of such wages;**

C. **The approximate period during which the alleged FLSA violations occurred; and**

D. **The nature of the wages (e.g., overtime or straight time):**

34. Defendants, exercising reasonable diligence, would have gained knowledge that Plaintiff and their employees were not being compensated at the rate of one and a half times

---

[1] That amount applies just for the Plaintiff; it is believed that she is not the only current and former employee entitled to overtime for work performed over the last three years (who, ultimately, should be notified by court order and given a chance to join this collective action). Note also that it is believed that the Defendants failed to post the notice required by the FLSA and, therefore, there should be an equitable tolling of the Statute of Limitations all others similarly situated.

the regular rate for those hours that were worked in excess of forty (40) per week, as required by the FLSA. Defendants knew the amount of time Plaintiff spent performing work or, with the exercise of reasonable care, could have and should have known of the existence of all of the time worked by Plaintiff.

## STATEMENT OF FACTS

35. Plaintiff worked for the Defendants for the entire three-year period preceding the filing of this action until her wrongful termination on October 23, 2020.[2]

36. Plaintiff performed various nonexempt sales work for Defendants.

37. Plaintiff was paid a flat amount each week.

38. Defendants knowingly and willfully operated their business with a policy of not paying overtime compensation to Plaintiff, which was in violation of the FLSA.

39. Defendants knowingly misclassified workers throughout the Corporate Defendants as "salaried," in part so that the Defendants could improperly attempt to avoid paying overtime to non-exempt workers who were actually employees entitled to be paid overtime.

40. Defendants knew or should have known they were in violation of the FLSA, sufficiently so as to warrant the extension of the applicable statute of limitations from two to three years.

41. Furthermore, the poster employers are required to post to inform employees of their rights under the FLSA was not posted and/or kept current and, therefore the applicable statute of limitation should be equitably tolled. See, e.g., Cruz v. Maypa, 773 F.3d 138, 147 (4th Cir. 2014) (extending failure-to-post tolling in the ADEA context to the FLSA); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) ("Failure to provide required notice of the governing legal requirements may be a sufficient basis for tolling."); Kamens v.

---

[2] Plaintiff worked for Direct Fragrances for over 17 years total.

8

Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations.").

42. Defendants have violated Title 29 U.S.C. §206 and/or §207 in that, among other reasons:

    (a) Plaintiff was not paid overtime to which she was entitled; and

    (b) Defendants have failed to maintain proper time records as mandated by the FLSA.

43. Other employees similarly situated to Plaintiff were not paid overtime they had earned.

44. Plaintiff has retained Schwarzberg & Associates, P.L. to represent her (and those who join in this collective action) and has agreed to pay the Firm reasonable attorneys' and paralegal fees for its services.

45. Plaintiff has fulfilled all conditions precedent to the filing of this lawsuit and/or such conditions have been waived.

**COUNT I**
**UNPAID OVERTIME COMPENSATION – DECLARATION—**
**VIOLATION of 29 U.S.C. § 207**

46. Plaintiff realleges and reavers the General Allegations as if fully set forth herein.

47. During Plaintiff's employment with the Defendants, she worked hours in excess of forty (40) per week for which she was not compensated at the statutory rate of time and one-half.

48. Plaintiff was entitled to be paid at the rate of time and one-half for hours worked in excess of the maximum hours provided for in the FLSA.

49. Defendants failed to pay Plaintiff overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

50. Plaintiff failed to keep records of time worked by Plaintiff. Records concerning the actual compensation paid to her are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case to determine the amount due to her.

51. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff at the statutory rate of time and one-half for the hours worked in excess of forty (40) hours per week when they knew or should have known such was due.

52. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

53. Plaintiff has suffered damages in the amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

54. Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, respectfully requests that judgment be entered in her favor and for all others similarly situated who join in the action against the Defendants jointly and severally:

a. Declaring that Defendants have violated the overtime provisions of 29 U.S.C. § 207;

b. As to Plaintiff and others similarly situated:

   i. Awarding overtime compensation in the amounts to be calculated;

   ii. Awarding liquidated damages in the amounts calculated;

   iii. Declaring that the statute of limitations should be extended to three years and/or that the statute of limitation be tolled;

   iv. Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

   v. Awarding post-judgment interest; and

    c.    Ordering any other and further relief this Court deems to be just and proper.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE FOR HERSELF AND ALL OTHERS SIMILARLY SITUATED.**

SCHWARZBERG & ASSOCIATES
*Attorneys for Plaintiff*
2751 South Dixie Highway, Suite 400
West Palm Beach, FL 33405
Telephone:   (561) 659-3300
Facsimile:   (561) 693-4540

By: /s/ ***Steven L. Schwarzberg***
STEVEN L. SCHWARZBERG
Florida Bar No. 306134
steve@schwarzberglaw.com
mail@schwarzberglaw.com